# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Miranda Stephenson, individually and on behalf of all others similarly situated, | Civ. No. 08-4619 (JMR/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Information Providers, Inc., a Minnesota corporation, | |
| Defendant. | |

Bradford B. Lear, Esq., and Todd C. Werts, Esq., Lear & Werts LLP; Charles G. Frohman, Esq., and Michele R. Fisher, Esq., Nichols Kaster, PLLP; and George A. Hanson, Esq., Richard M. Paul, III, Esq., and Barrett J. Vahle, Esq., Stueve Siegel Hanson, LLP, counsel for Plaintiff.

Lisa M. Lamm, Esq., Foley & Mansfield, counsel for Defendant.

## INTRODUCTION

Plaintiff Miranda Stephenson has sued Defendant Information Providers, Inc., alleging that it violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "FLSA"), when it misclassified her (and those similarly situated) as exempt from the overtime requirements of the FLSA, and by failing to keep accurate records of all hours worked by its employees. This matter is before this Court for a Report and Recommendation to the District Court on Plaintiff's Motion

for Collective Action Certification under 29 U.S.C. § 216(b).[1] *See* 28 U.S.C.

§ 636(b)(1) and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court

recommends that Plaintiff's motion be granted.

## BACKGROUND

Defendant Information Providers, Inc. ("IPI"), provides on-site audit

services to insurance companies. Plaintiff Miranda Stephenson was employed as

a "Premium Auditor" by IPI.[2] Stephenson's job duties as a Premium Auditor

consisted of traveling to businesses insured by insurance companies who were

IPI's clients and conducting audits of the insureds' payroll and other business

records. Among other things, Premium Auditors confirm and record the insureds'

number of employees and their job classifications, gross payroll, and business

organization. Without receiving overtime compensation, Stephenson contends

that she and other similarly situated Premium Auditors[3] routinely worked in

excess of 40 hours per workweek.

---

[1]    On December 15, 2008, the parties stipulated to extend the deadline for
Plaintiff to file her motion for conditional certification until after the Court ruled on
any motions for summary judgment. (Doc. No. 18.)

[2]    Although Stephenson's job title was "Premium Auditor" and one often
associates the job of an auditor with that of an accountant, Stephenson did not
perform any of the professional services of an accountant. Her job was to verify
information about an insured's business for IPI's insurance company clients so
that the insurance companies could determine what the appropriate premium
should be for that insured.

[3]    Some Premium Auditors employed by IPI are paid on what IPI calls a "fee
(Footnote Continued on Next Page)

Stephenson filed this FLSA collective action seeking to represent a proposed class of all similarly situated Premium Auditors employed by IPI nationwide who worked over 40 hours in a workweek within the statutory period without receiving overtime pay. The FLSA requires employers to pay non-exempt employees at a rate not less than one and one-half times their regular pay rate for work performed in excess of 40 hours per workweek. 29 U.S.C. § 207. In an Order adopting the undersigned's Report and Recommendation, the District Court concluded that "Stephenson is not exempt from the FLSA's overtime provisions." (Doc. No. 47.) The District Court further stated that "Plaintiff is entitled to receive employment compensation for work in excess of 40 hours a week at a rate not less than one and one-half times her regular rate." (*Id.*) In addition to Stephenson, seven current and former IPI employees have signed consent forms to opt-in to this lawsuit, and all of these opt-in plaintiffs have executed declarations describing their employment with IPI. (Doc. No. 85, Exs. 5-11 and attached internal exhibits; Doc. No. 89, Ex. A.)

Plaintiff now seeks certification of her collective action. IPI objects to the procedural manner in which Stephenson brought the present motion.

---

(Footnote Continued from Previous Page)
basis" and some are paid on a salary basis. For the purposes of this motion, when this Court refers to "Premium Auditors," it is referring only to those employees, like Stephenson, who were categorized as being paid on a "fee basis."

Specifically, IPI objects to Stephenson's failure to follow a customary two-stage collective-action-certification process and asserts that Stephenson engaged in inappropriate and misleading pre-certification communications with prospective opt-in plaintiffs.[4]  Finding that Plaintiff has met the requirements for the certification of the proposed collective as defined, this Court recommends granting the motion.

## DISCUSSION

Plaintiff proposes the following FLSA class: "those current and former 'Fee Paid' Premium Auditors employed by [D]efendant Information Providers, Inc.

---

[4]     In IPI's Memorandum of Law in Partial Opposition to Class Certification Motion (Doc. No. 111), IPI did not oppose certification.  Specifically, it stated that it "does not oppose the fact that the seven additional opt-in class members are similarly situated to Plaintiff Miranda Stephenson."  (*Id.* at 2.)  IPI further stated that as to the four certification elements, "IPI does not dispute that the seven putative class members are similarly situated to Plaintiff Miranda Stephenson."  (*Id.* at 3.)  On May 3, 2009, four and a half months after the Motion for Certification had been filed, and after stipulating to waive oral argument, and after stipulating to a schedule going forward, IPI filed a letter with the Court requesting to "reopen the record for purposes of supplementing its opposition to Plaintiff's Motion to Certify the Collection Action," asserting that it now believes that "the Plaintiff and opt-ins are not similarly situated."  (Doc. No. 120.)  IPI has offered no support for its stark change in position that the Plaintiff and opt-ins are now not similarly situated other than its conclusory statement, and IPI has offered no reason why it could not have made any of its arguments in a timely manner in its opposition to the motion.  IPI arguably was on notice of the potential opt-in Plaintiffs since the filing of this lawsuit and, at a minimum, knew who the opt-ins were as of November 2009, when the opt-in Plaintiffs filed consent forms.  There is no reason why, if IPI thought the opt-ins might not be similarly situated, it could not have taken their depositions before the filing of their opposition motion.  Therefore, IPI's request to "reopen the record for purposes of supplementing its opposition to Plaintiff's Motion to Certify the Collection Action" is denied.

4

within the previous three years who have joined this case by filing a Consent to Join form[.]" (Doc. No. 83.) Section 216(b) of Title 29 of the United States Code governs certification of collective actions under the FLSA. It allows "any one or more employees" to maintain an action against their employer "for and in behalf of himself or themselves and other employees similarly situated" to recover damages for the failure to pay overtime. 29 U.S.C. § 216(b). An FLSA "collective action" differs from a class action under Federal Rule of Civil Procedure 23. In a class action, a potential plaintiff's claim is automatically included in the case unless she expressly "opts out" of the class. By contrast, a potential plaintiff's claim will be included in a collective action *only* if she expressly opts *in* to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless [she] gives [her] consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The process by which putative plaintiffs are joined, in a FLSA collective action, is commonly referred to as the "opt-in" process, and Courts may facilitate that process by authorizing the named Plaintiffs to transmit a court-approved notice to potential class members. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). However, "[t]hat power is to be exercised . . . only in 'appropriate cases,' and remains within the discretion of the district court." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991).

"The fundamental inquiry in determining whether a collective action under § 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'" *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). "Unfortunately, [Section] 216(b) does not define the term 'similarly situated,' and there is little circuit law on the subject." *West v. Border Foods, Inc.*, No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *2 (D. Minn. July 10, 2006) (some internal quotation marks omitted; alteration in original). "The determination of 'similarly situated' is achieved by analyzing various factors on a case by case basis." *Ray v. Motel 6 Operating, Ltd. P'ship*, No. 3-95-828 (RHK/ADM), 1996 WL 938231, at *3 (D. Minn. Mar. 18, 1996). "Plaintiffs bear the burden of establishing that they are similarly situated." *Smith*, 404 F. Supp. 2d at 1149.

Courts "have developed a two-step process for determining whether plaintiffs are similarly situated for certification of a collective action under the FLSA[,]" *Kalish v. High Tech Institute, Inc.*, No. Civ. 04-1440 (JRT/JSM), 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005), which has been described as follows:

> At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes. [*Kalish*, 2005 WL 1073645 at *1]. At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. *See*[] *id.* at *2; [*Severtson*, 137 F.R.D. at 267] (Severtson I). That is, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations. *Severtson I*, 137 F.R.D. at 267; *Severtson v. Phillips*

> *Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992[)] (Severtson
> II).  At the second stage—which comes after discovery is
> completed—the court uses a stricter standard for determining
> whether the putative class members are similarly situated and
> reconsiders whether the trial should proceed collectively or if it
> should be severed.  *Kalish*, 2005 WL 1073645 at *1.  At the second
> stage, the court conducts a fact intensive inquiry of several factors,
> including: (1) the extent and consequence of disparate factual and
> employment settings of the individual plaintiffs; (2) the various
> defenses available to defendant which appear to be individual to
> each plaintiff; and (3) fairness and procedural considerations.
> *See*[ *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03
> (10th Cir. 2001)].

*Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107 (PJS/RLE), 2009

WL 130069, at *5 (D. Minn. Jan. 20, 2009) (quoting *Frank v. Gold'n Plump*

*Poultry*, Inc., No. Civ. 041018 (JNE/RLE), 2005 WL 2240336, at *2 (D. Minn.

Sept. 14, 2005)) (alterations added).

Here, Plaintiff does not request court-authorized notice; instead, Plaintiff

contends that the Court can skip to the second-stage certification analysis in the

first instance.  IPI objects to Stephenson's failure to follow the two-stage class

certification process and asserts that Stephenson engaged in inappropriate and

misleading pre-certification communications with prospective opt-in plaintiffs.[5]

This Court agrees with Plaintiff under the circumstances of this particular case.

---

[5]    IPI has already raised arguments regarding the alleged inappropriate and
misleading communications in both a Motion to Compel (Doc. No. 95), and a
Renewed Motion for Temporary Restraining Order (Doc. No. 70).  The former
motion was denied by this Court, and the latter was stricken by the District Court.
(*See* Doc. Nos. 79, 106, 107.)

Nothing in *Hoffman-La Roche* requires that there be a formal notice stage; the Court there simply concluded that courts **may** facilitate the notice process by authorizing the named Plaintiffs to transmit a notice to potential collective members. *See* 493 U.S. at 170. Further, under certain circumstances where there has already been "'extensive' discovery" or a significant number of potential plaintiffs have already filed consent forms to join the lawsuit, courts impose the more stringent standard at the initial stage. *See Kalish*, 2005 WL 1073645, at *2 (citing cases); *see, e.g.*, *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) ("In some cases, the Court will skip the 'notice' step and move directly to a second-step evaluation of Plaintiffs' Motion for Class Certification."); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002) (engaging in a more rigorous review in light of plaintiff's "extensive discovery with respect to [defendant's] policies regarding the pay provisions of employees"); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000) (electing "to apply a stricter standard in its analysis," because "over 100 potential plaintiffs ha[d] already opted into this lawsuit" and because discovery had been completed before the motion for certification of collective action had been filed); *Ray*, 1996 WL 938231, at *4 ("[I]n the present case, the facts before the Court are extensive, [and] accordingly there is no need for discovery in order to reach a determination."). Here, as Stephenson indicated in her Complaint and as IPI has indicated in submissions to the Court, the number and identity of the prospective

8

opt-in plaintiffs was determined from IPI's records and disclosed during discovery, and the potential collective members were "easily and quickly [] notified of the pendency of this action" through the use of a press release that has been disclosed to IPI. (Doc. No. 1, Compl. ¶ 19; *see also* Doc. No. 97, Def. IPI's Mem. of Law in Supp. of Mot. to Compel Disc. 2; Doc. No. 103, Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Compel Disc. 9-10.) In addition, the facts before the Court regarding the certification issues are extensive, and there is no need for further discovery in order to reach a determination. Therefore, this Court finds that the circumstances of this case warrant analyzing whether certification is appropriate under the more stringent second-stage standard at this time.

This Court finds that Plaintiff and the proposed class members are "similarly situated" for several reasons. First, all proposed class members have substantially similar job duties. The declarations from the opt-in plaintiffs establish that they all were employed by IPI within the past three years as "premium auditor[s] working on a non-salary basis," who "travel[ed] to businesses insured by the insurance companies who are clients of IPI . . . [and] conduct[ed] . . . audit[s] of the insured's payroll and other business records." (Doc. No. 85, Exs. 5-11; Doc. No. 89, Ex. A.) Second, all Premium Auditors are governed by the same IPI Employee Manual and therefore subject to the same policies and procedures. (Doc. No. 85, Ex. 13.) Third, Stephenson and all seven opt-in plaintiffs' compensation (and all "fee-based" Premium Auditors), was calculated in

the same manner.[6]  (Doc. No. 85, Ex. 3 at 30, 31, and 39; Exs. 5-11; Doc.

No. 89, Ex. A.)  And fourth, all of the proposed class members were classified by

IPI as exempt from the FLSA overtime requirements.  (Doc. No. 85, Ex. 2 ¶ 14,

Ex. 3 at 55, Ex. 4.)  Further, IPI does not raise any defense that is particular to

Stephenson or any other Premium Auditor, and fairness and procedural

---

[6]     IPI compensates Premium Auditors based on (1) "production pay," and
(2) "non-production pay" or "admin pay."  Production pay is based on a
percentage of the Premium Auditor's billable hours that are actually charged by
IPI to IPI's clients.  A Premium Auditor's billable hours (or chargeable time), may
consist of, among other things, the time the Premium Auditor spends on-site, the
time the Premium Auditor spends scheduling the audit, and for the time spent by
the Premium Auditor to draft the audit.  Billable hours do not include time spent
driving to an audit, over one hour for any audit that is returned as a closeout, time
spent at the audit location on an unsuccessful attempt to do the audit, transfers
between auditors, and routine missed attempts.  The amount actually charged to
IPI's client is based on the billable hours performed by the Premium Auditor.
However, not all of the billable hours performed are automatically charged to the
client.  IPI determines which billable hours to charge to the client and which to not
charge.  Production pay is then calculated by multiplying the Premium Auditor's
percentage/commission rate by the amount actually charged to IPI's client.  The
percentage/commission rate is a negotiated and agreed-upon rate that remains
consistent for each audit performed by the Premium Auditor.  IPI's Premium
Auditors are paid their production pay for a certain audit upon the audit's
completion.

    "Non-production pay" or "admin pay" is calculated on an hourly basis and is
provided for certain non-billable tasks, such as meetings, job training, or traveling
outside of a Premium Auditor's territory.  The record reflects that Stephenson was
compensated for non-production and admin tasks at a rate of $19.50 per hour.
Also, in the case of Stephenson, IPI paid additional incentive payments during
certain pay periods when her production pay was low, in order to incentivize her
to not resign.  These payments were categorized as "admin pay," and were
recorded as though they were payments based on hourly work performed, even
though they were not necessarily payments for work performed.  Prior to the filing
(Footnote Continued on Next Page)

considerations dictate that certification should be allowed in order to avoid duplicative, costly, and unnecessary litigation.

Because this Court finds that Stephenson has satisfied the requirements of 29 U.S.C. § 216, this Court recommends that this matter be certified as a collective action.

## RECOMMENDATION

For the reasons stated, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Collective Action Certification under 29 U.S.C. § 216(b), be **GRANTED**.


Date: May 7, 2010

                              _s/Jeffrey J. Keyes_
                              JEFFREY J. KEYES
                              United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 21, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

(Footnote Continued from Previous Page)
of this lawsuit, IPI did not guarantee its Premium Auditors a predetermined amount of compensation each week of at least $455.